All cases on the calendar this morning, the protest case from the Court of Federal Claims, two patent cases, one from the District Court and one from the Patent Office, and a government employee case from the Merit Systems Protection Board that was submitted on the briefs and therefore will not be argued. First case is from the Claims Court, Lawson Environmental Services v. United States, 1621-46, Mr. Watson. Good morning, Justice Lurie. The Court of Federal Claims committed error in this case for a few reasons. The first issue was deciding that the EPA's corrective action that the agency's determination that the offeror's letter of intent was a responsibility issue versus a proposal responsiveness issue. We believe that the Court erred on that aspect of it. Responsiveness means whether they answered the questions. Correct, Your Honor. Basically, in the proposal or the bidding process, the offerors first have to submit a proposal. And the first stage of the evaluation is where the technical evaluation panel in this case first has to review whether the offerors responded to the solicitation requirements. That's the first step before they get to the point of whether the contractor was responsible to perform the contract. So our contention here is that the letter of intent was a solicitation requirement that goes directly to whether the offeror met the solicitation requirements versus at the second stage where the agency is using it for a contractor responsibility issue. Isn't the problem, though, that the information was provided, the agency just determined that that information was not sufficient? And so because the information was actually provided, it would be responsive, but the problem was on key personnel, it wasn't sufficient, so it was a responsibility issue. I respectfully disagree. I think one of the important things for the Court is to realize that before this current evaluation, this is a corrective action phase that we're into, that prior to that, the agency lost and actually submitted a bid protest to the agency, and the agency launched an investigation as a result of that bid protest, and then they made the findings through an investigation that COASL or CAJV failed to submit a valid letter of intent. That decision was made in the agency protest. As a result, they moved into a second phase, a totally new evaluation, and it's at that point that the technical evaluation panel, relying on what they found at the bid protest, made an affirmative determination that the letter of intent was invalid, and because of that sole reason, they did not get to determine or to evaluate the resume. Wasn't the proposal that you submitted, it was complete, correct? I mean, all the blanks were filled in and all the information that was solicited was provided. That is correct, Judge Reyna, but what's critical here is that at the initial submission, the agency, based on the protest, decided they came to a new conclusion, and they took a different direction altogether. They sustained the loss in protest, and our point to the Court here is that the new or the corrective action, the evaluation, is totally distinct from the prior review. This is a totally new evaluation, and we believe that's where the Court erred, because it related back to the prior evaluations, which the corrective action is essentially a line drawn between what has happened before and the totally new evaluation. Now, you rely on the Manus case, correct? So is it that case, though, distinguished in that in that case the agency specifically said that the bid or proposal was non-responsive, but then went ahead and sent it to the SBA? Isn't that different than here, where the agency went ahead and sent it to the SBA, but never said that the bid was not responsive? Well, our position is that if you looked at, I believe it's Appendix 78 and 79, the agency's determination, if you look at the language from the Technical Evaluation Panel, it's flustered with actual language that says that based on our new review of the proposals, we find that COSO or CAJV did not meet the solicitation requirements as related to the letter of intent. And for that sole reason, we could not get to the second step of evaluating the resume. That was the exact decision in Manus. What the agency did in Manus was they made a determination that, in fact, the court in Manus... I'm sorry, I'm looking at this and I'm reading it as saying that they didn't meet the requirements, not that they didn't provide the requested information. Not meeting the requirements would seem to go to responsibility. I totally, respectfully disagree. And the reason I disagree is because in Manus, they drew a clear distinction in the procurement process of what the agency has to do first before they get to a responsibility issue. In the Manus case, the issue was a past performance issue, which if you look at the language of the COC, Certificate of Compensating Regulations, would fall within the responsibility. But the distinguishing factor in Manus is that the offer failed to provide a past performance reference list. And in that case, the court determined that the agency had it right to begin with. In that case, a proposal was incomplete on its face. I mean, when it was submitted. Correct. And in this case, the proposal was complete. And that's what the government argued here. Where we're different with that is that the facial compliance would be used if the agency, for example, the bid protest stage, would have put its foot down and said, look, we base this proposal on facial compliance. But instead, the agency took a totally different direction. Well, I don't want to cause any confusion. When I said clear on its face, I guess what I'm saying is that the proposal contained enough information in it to make an evaluation. So it was complete in that respect. I would agree with the court on that aspect. But I think what's different here, and I believe where the Court of Federal Claims erred, is to give weight to the fact that the new evaluation starts a totally new evaluation altogether. And in that new evaluation, the agency, based on what they have found in the bid process. At that point, that new evaluation is as to the technical aspects of the proposals, right? And not to its responsiveness. I mean, we have a responsive proposal. So the additional evaluations are the ones you're talking about go more to the responsibility. I believe that the agency's determination at the re-evaluation stage, if you look at the language again, there's two notes. And one of the things I want to point out to the court is that appendix... I'm looking at 78. Counsel, can you direct us to the language? I think you did say on page 78 and 79. So on appendix 78, there's a resume for the site superintendent. Right down to the bottom of that, this is where I wanted to draw the court's attention, that this document was actually the old evaluation. During the corrective stage, they made an amended note. All they did is took an amendment at the bottom and it says, amended note. Additional information received from the proposed site superintendent revealed that the letter of intent included in this resume was not valid. And therefore, the SS qualification could not be considered. And that was the sole reason for deeming them technically unacceptable. The agency never got to review the actual resume, which is our position that the resume itself would go to the responsibility had they gotten to that point. But they never got there. So I believe that the Court of Federal Claims' opinion made a determination that the agency actually did review the offeror's qualifications. I believe that's a factual error because they didn't get to that stage. They didn't get to review the actual qualifications. They stopped only at the letter of intent, which was a material requirement of solicitation. And the reason why that was a requirement was the key personnel requirement expressly said that either you have a current employee or if you don't, then we require a letter of intent. In this case, Coastal did not have a current employee, even though the resume that they submitted clearly says that he was a current employee. Now, does it make a difference that what you cite to us here on page 78 is a TEP report and not the conclusions of the CO? Well, did you ask, does it make a difference? I believe it makes a clear difference because it's a technical evaluation panel that actually reviews, makes the new evaluation. It's that board or that group of people. The CO makes the final decision on that. Correct. And that would go to the issue of where we argued on the second point that the CO failed to give proper and sufficient information to the SBA. And we also address that issue as a second point. We believe that the court here... Is this your argument that their corrective letter should not have been provided to the SBA, your second issue? That's one of the issues in that second argument, yes. When it got to the stage where the CO actually developed the COC package and where he actually summarized the reason for it. And it's that document where we argued to the Court of Federal Claims that the letter of intent should not have been provided to the SBA simply because the affidavit that was in question came after the bid protest decision, which the agency sustained. It came after the deadline of the bid protest investigation that gave COCEL a deadline to submit any affidavit, et cetera. This affidavit came six weeks after the fact and actually after the technical evaluation panel had made their formal decision. It's our position that the EPA should have rejected that letter because of the tardiness, which they admitted on the record. Six weeks after the investigation, they should have rejected it because that document was not a solicitation requirement. The affidavit was not a solicitation requirement. It only came as a response to the agency's investigation. Mr. Watson, you wanted to save some rebuttal time. You are into that now. Okay. Yes, Your Honor, I like to save at least three minutes if I have it for rebuttal. Well, you're already into that period, but we'll give you three minutes. Thank you, sir. Mr. Snyder. May it please the Court. The SBA's issuance of a Certificate of Competency in this case, as well as its decision regarding Coastal Environmental Works HUBZone status, both affirmed by the trial court, were factually and legally sound. Turning first to the Certificate of Competency issue and focusing on the issues that were discussed a few moments ago, the TEP, as the Court was just discussing, evaluated the solicitation in this case. The question here is whether this is a responsibility issue or a responsiveness issue. The TEP on page 79 of its evaluation report, you were looking at page 78 a moment ago, to zero in directly on that, there's language on page 79 that explains that the TEP's decision is based upon information provided in the context of the bid protest, new information. Is that under the summary heading? Is that what you're referring to? It's on page 79 in the summary, yes, Your Honor. And the second sentence is, the TEP agreed that review of the new information received following the bid protest disqualified the proposed site superintendent from consideration. And so that sentence, I think, encapsulates the issue, which is that the proposal was responsive. And after the bid protest, which provided additional information, a decision was made by the technical evaluation panel that they failed on this key personnel issue. The case manus explains a two-step process that is followed. First is responsiveness, second is responsibility. Here, we got past the first step and we're at the second step. And at the second step, the agency decided to fail Coastal EnviroWorks on this issue. Responsibility has to do with whether or not a company or firm is capable of performing the contract. And so this is a classic responsibility issue, Your Honor. Here's a concern that I have with that. We're talking about the August 2 affidavit, correct? And it came six weeks after the deadline, and it also arrived after the TEP had issued its decision. So was it reasonable for the CEO at that point in time to consider the August 2 affidavit? Yes, Your Honor. Not only was it reasonable, it would have been unreasonable and, as the trial court said, arbitrary and depreciative. Doesn't that kind of render the TEP useless at that point? It wasn't useless. There was a finding of non-responsibility by the agency, by the TEP, and ultimately by the contracting officer. But as the statutes, the Small Business Act contemplates in implementing regulations as well as the federal acquisition regulations, when a small business is found non-responsible, there's further process. The SBA ultimately makes that decision whether they're responsible or not. And so here the process worked exactly as it should. The agency, additional information was provided after the finding of non-responsibility, and that is permissible under the regulatory framework. The regulations, the SBA regulations, provide that a firm is able to provide additional information to the SBA. And also the SBA is permitted, not only permitted, but should consider all elements of responsibility, not just the elements of responsibility. So I agree with that. The SBA needs to consider all the elements. Yet the SBA only provided a one paragraph for its reasoning. And I query whether one paragraph is reflective of it having considered all of the elements of the matter. Shouldn't it have given us a little bit more of a thorough reasoning? In this case, it's a lowest price technically acceptable solicitation. In parlance, LPTA is the parlance. In that case, the simple question is whether or not the company can meet all these technical requirements. There's not, as in other types of protests, a tradeoff or comparative analysis. If you're the lowest price and you're technically acceptable, then you are awarded the contract. And so here the only question was whether or not they were technically acceptable for the issue of key personnel. All the other technical aspects. But it's clear. You're either technical or you're not. Exactly. There's no gray area here. There is no gray area. And so in all the other technical, there were, I think, other factors, three or four other factors of technical responsibility. There was no question that this firm met those factors. The only factor for technical responsibility that was presented to the SBA was the key personnel factor. And they wrote a paragraph about that and addressed the issues with the evidence in front of them that was presented. And that evidence was substantial evidence. In the end, the affidavit that was provided by the site superintendent, the final affidavit. You say substantial evidence, but our standard of review is a rational basis review. Correct. With respect to the SBA decisions. It's not substantial evidence. It seems to me that it's even more deferential than substantial evidence. I would submit, Your Honor, that is both. They have to have a rational basis. Of course, they have to not violate statute of regulation. And the decision here, in addition to those things, was also supported by substantial evidence as well. And so all of those requirements are met here. And the trial court correctly, and the GAO prior to the trial court, came to the same conclusion. For the same reasons. So really, I think the... How do you respond to the point about that amended note on the bottom of page 78? The amended note that says specific... Yes, Your Honor. There is language, and that's not the only instance in the technical evaluation panel's amended report, that in the context, the very unique factual circumstances of this case, if you isolate certain words, they're saying this isn't a valid letter of intent. That's the language they used here. But ultimately, that language meant that they were finding them non-responsible. It wasn't that they were finding them non-responsive, for the reasons we've discussed. So this language that says... Or the other language that's been used is a false letter of intent. Ultimately, the facts, as they ultimately formed in the record, showed that it wasn't a false letter of intent. But at this juncture in the case, when the TEP wrote this report, they had misgivings. For good reason, at that juncture. And so, as I said, this is why this case sort of exemplifies that the SBA's role worked, as it should here. The SBA came in and looked at the full body of evidence, giving the firm the opportunity to provide evidence on its responsibility as the regulations permit. Earlier, you mentioned there's an SBA regulation that allows the SBA to look at later evidence. I'm not sure if that's exactly what you said. Which particular regulation were you referring to? It's 13 CFR 125.5 D2. And that didn't happen here, because the EPA provided the final affidavit to the SBA. There was no occasion for EnviroWorks, Coastal EnviroWorks, to provide any additional information, because it had been provided by EPA. But that regulation just demonstrates that nothing improper happened in this case. And just to repeat, the trial court stated explicitly that if EPA had not provided the letter of intent, that would have been the final affidavit, as Lawson submits, they should not have. That decision itself would have been arbitrary and capricious to withhold evidence from the SBA, when the SBA is the body that's supposed to be making the decision. Would the court like me to address this HUBZone issue that wasn't discussed initially? That would be worthwhile. This issue, essentially, to be eligible for this contract, you had to be HUBZone qualified. And that means that 35% of your employees reside in what's called a HUBZone, which is a historically underutilized business zone. The purpose of the HUBZone program is to bring business to those areas. Here, Coastal EnviroWorks certified, as the regulations require, that it was HUBZone qualified. It provided tax returns, payroll records, written evidence, all under penalty of perjury, that demonstrated that it was HUBZone eligible. Lawson, through a series of protests to the SBA, argued that Coastal EnviroWorks should not be determined to be HUBZone qualified. And SBA found that its arguments were real speculative in nature. And we agree with that. The GAO agreed with that. The trial court agreed with that. Was MANUS a HUBZone case? I'm not certain. It was certainly involving a small business, but I don't know if it was a HUBZone case or not. It was one of these lowest price technical cases. That's correct, Your Honor. It was. And it involved a small competition among small businesses. But I'm not certain if it was a HUBZone case or some other small business program that was being used. And so the HUBZone determination here, SBA consistently held, in response to two protests and two appeals of each of those protests, that there was no evidence presented that demonstrated that EnviroWorks was not HUBZone qualified. As I understand it, Lawson's argument here is that the SBA's decision on the matter suggests that they didn't consider the letter in question, whereas the Court of Claims' decision seems to take that letter into account. And that's where the error, I think, is asserted. How do you respond to that? The SBA initially said this is new evidence and we don't consider new evidence. But it went on to analyze it anyway and said it's speculative and it doesn't establish anything regarding Lawson's HUBZone status. So it did address it, but it was a secondary point. In the footnote? Excuse me? In the footnote of the opinion? Is that what you're referring to? Well, there were four opinions in this case. And so it wasn't, I think, one of them was in a footnote. It, at some point, was included in the text and in the later, I think, the final HUBZone appeal opinion, it was included. And the trial court also agreed with the SBA's observation that this evidence, even though it was new evidence, it didn't change the outcome. Essentially, nothing had changed regarding the HUBZone status of this company. The Department of Homeland Security letter that was sent to Lawson that was provided as evidence, as I said, was sent to Lawson. It was a letter to Lawson that said that they had employed three people who were apparently working here illegally. And Lawson tried to use that to argue that one of EnviroWorks' employees was here illegally. Because he had the same name. Because they had the same name. That employee wasn't working for EnviroWorks at the time of the first award, but it wasn't ever established that he was the same person either. And ultimately, it's not, the regulations don't require you to, what they require is for you to be a resident of a HUBZone. That's all they require. And so even just on that basis, if you're paying federal taxes and you're on the payroll records and you live in a HUBZone, that's what the SBA looks at. And that's what they did here. If there's nothing further, then that's fine. Thank you, Your Honor. Thank you, Mr. Snyder. Mr. Watson has some rebuttal time, three minutes. Thank you, Your Honor. I want to cover a couple things. First, a rebuttal to the SBA's position about the HUBZone residency requirements. 13 CFR 126601 requires that the SBA makes a determination for a HUBZone participant both at the time of award and at the time of bid offering, the offer and award, both periods. It's not discretionary, not A or B, both. Your opponent will say all they have to do is look at the address and see if they're paying the payroll taxes, et cetera. It's not up to, I think his argument is that it's not up to the SBA to make immigration-type decisions. And our position is that's what the SBA says, but when you look at the congressional intent given to the SBA to oversee the program, there's a couple things that come into play. First of all, those 35% employees have to reside in a HUBZone. What the SBA is saying, and even given the letter from another federal agency, the SBA admitted in that footnote that I believe the court referred to, this is on the second protest, that they acknowledge that one of the same individuals with the same name in the letter actually worked for Coastal at the time of award. Even if that's true and you take that one person out of the equation, the remaining number of employees still satisfies that residential requirement, doesn't it? That's incorrect. At the award stage, which the SBA admitted that they saw at least one of the names and they did nothing, they determined at the initial HUBZone protest that four out of 11 employees met the HUBZone requirement. If the SBA had taken the investigation further, one of those employees would have brought it down to three and that would have been less than the 35% requirement. I have to say I disagree with your characterization of that footnote. I think that that footnote simply says that an individual with the same name as one of the three alleged unauthorized workers worked for EnviroWorks at the time. It just means that there was someone with the same name, right? It doesn't say it's the same person. It says someone with the same name. I think that highlights our point. The SBA has an obligation that when issues come up and you can look at the tools given to them on 126.503 and 900, that when a HUBZone participant doesn't meet the requirements, my position is that there's more that's required from the SBA to simply look at an address, especially when another federal agency gives them information to look at. They have to go further to make sure that none of these participants are violative of the program. Who makes the HUBZone decision? It's the CEO. Your Honor, the SBA makes the determination. Congress has given the SBA explicit authority to run the HUBZone program. So by the SBA acknowledging, our position is they were required to do more, even if it's to pass on to the agency that does investigate these things. It's the CEO that makes the final determination as to whether HUBZone criteria are satisfied or not. I respectfully disagree. That's the SBA's sole decision. However, that's not even the reason why this was referred to the SBA. And our position is, and one of the points that we're saying that the CEO failed to give credible evidence to the SBA, Court of Federal Claims looked at FAR 19602 in its decision to make the determination of what needs to go into a package. However, the Court of Federal Claims in the language of 602 itself expressly has a requirement for 9104G. In that requirement, and this is at the stage where the CEO is making the package to send to the SBA, the CEO has to make a determination whether the offeror is eligible under other regulations. And that's part of the SBA referral. Our petition here is, even though the fact that Lawson provided information to the CEO, the COC referral never mentioned anything that's required under 9104G. Thank you, Mr. Watson.